IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11 cr 53

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Vs. | ) |
| | ) |
| CITRUS U-GNA-ST BIGWITCH. | ) |
| | ) |
| | ) |

## ORDER OF CERTIFICATION OF CRIMINAL CONTEMPT

**THIS MATTER** is before the court upon the Plea Agreement (#3) filed herein which provides in paragraph 8 as follows: "The parties agree that six months' imprisonment is the appropriate disposition of the case. Pursuant to 28 U.S.C. § 636(6), the parties will request that the magistrate court certify the facts concerning the contempt to the district court for disposition."

28 U.S.C. § 636(e)(6) provides as follows:

**Contempt authority - Certification of other contempts to the district court**

Upon the commission of any such act---

(A)   in any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, or in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, that may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection, or

(B)   in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where--

(i) the act committed in the magistrate judge's presence may, in

the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection,

the magistrate judge shall forthwith certify the facts to a district judge any may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(5) provides as follows:

(5) **Criminal contempt penalties**.— The sentence imposed by a magistrate judge for any criminal contempt provided for in paragraphs (2) and (3) shall not exceed the penalties for a Class C misdemeanor as set forth in sections 3581(b)(8) and 3571(b)(6) of title 18.

From the Plea Agreement it appears that both the government and the defendant contend that the conduct of the defendant constitutes a serious criminal contempt punishable by penalties exceeding those as set forth in paragraph (5) of 28 U.S.C. § 636(e). Pursuant to the Plea Agreement which has attached to it as Exhibit 1 a document entitled "Factual Basis for the Guilty Plea for Citrus U-GNA-ST Bigwitch" the undersigned certifies the following facts:

1. The defendant, CITRUS U-GNA-ST BIGWITCH ("BIGWITCH"), during the months of October, November, and December, 2010, was in an intimate relationship with EMERY LEE LITTLEJOHN ("LITTLEJOHN"). BIGWITCH and LITTLEJOHN had two children together at that time.

2. On or about October 10, 2010, LITTLEJOHN, along with co-defendants

ADRIAN SHANE GEORGE ("GEORGE") and PAUL KENNETH TAYLOR ("TAYLOR"), aided and abetted each other in the commission of a burglary and robbery committed within the boundaries of the Eastern Band of Cherokee Indians reservation. GEORGE and TAYLOR forced their way into the victim's home while masked and brandishing what appeared to be a firearm (but was in fact a pellet gun) and demanded money from the victim. LITTLEJOHN served as the getaway driver with advance knowledge of the plan. Located in the vehicle operated by LITTLEJOHN were the two minor children of LITTLEJOHN and BIGWITCH, one of them being an infant.

3. While waiting in the car for his co-conspirators to return from the robbery, LITTLEJOHN decided to leave and pick up BIGWITCH from her place of work. LITTLEJOHN picked up BIGWITCH and returned to the area of the crime with her to pick up his co-conspirators. On the way back to the area of the crime, LITTLEJOHN informed BIGWITCH about the crime that was in progress and told her that he needed to pick up GEORGE and TAYLOR.

4. LITTLEJOHN and BIGWITCH arrived at the rendevous point and picked up GEORGE and TAYLOR. Shortly thereafter a patrol officer with the Cherokee Indian Police Department stopped the vehicle and quickly determined that the passengers had been involved in the reported robbery. All four were taken into custody and transported to the Cherokee Indian Police Department. The airsoft pistol was discovered under BIGWITCH's leg.

5. All four were interviewed and admitted to their respective roles in the crime.

In addition to confessing, LITTLEJOHN informed the police detective that he had told BIGWITCH about the scheme on the way back from picking her up from work and before reuniting with is co-defendants. During her interview, BIGWITCH initially denied any knowledge of the crime until after the police initiated the traffic stop. However, following LITTLEJOHN's confession, BIGWITCH admitted that LITTLEJOHN informed her about the robbery while on the way to pick up GEORGE and TAYLOR. BIGWITCH told the police that she placed the airsoft pistol under her leg because during the traffic stop GEORGE passed the pistol to her and she did not want the child who was sitting in her lap to have access to the apparent firearm.

6. LITTLEJOHN, GEORGE and TAYLOR were each charged in federal court with robbery in Indian country (18 U.S.C. §§ 2111 and 1153) by criminal complaints. LITTLEJOHN's complaint was filed as 2:10mj21 on December 1, 2010. All three were later indicted by a federal Grand Jury on December 7, 2010 (2:10CR31).

7. On December 3, 2010, United States Magistrate Court Judge Dennis Howell conducted a detention hearing in LITTLEJOHN's case. LITTLEJOHN as represented by Frank A. Abrams.

Issues material to this hearing included:

    a. the strength of the evidence against LITTLEJOHN;

    b. what danger, if any, LITTLEJOHN might pose to himself or to others if released on bond;

    c. whether LITTLEJOHN was a flight risk if released; and

    d. whether BIGWITCH could serve as a suitable custodian for

LITTLEJOHN.

8. Mr. Abrams called CITRUS BIGWITCH to the stand regarding the issue of detention and to offer her to the court as a possible custodian. BIGWITCH took the oath to tell the truth and was duly sworn prior to taking the witness stand. Nevertheless, during the hearing BIGWITCH made several false statements regarding facts material to the outcome of the hearing while under oath.

9. During direct examination, Mr. Abrams and BIGWITCH had the following exchange:

Q. All right. On the night in question, were you with the defendant [LITTLEJOHN] when he was arrested?

A. Yes.

Q. Okay. And tell me, did he basically say, I'm going out there to commit some kind of a robbery or something like that?

A. No.

Q. Okay. It had to do with picking up friends, did it not?

A. Yes, sir.

(Tr. 19) BIGWITCH knew that this was false testimony concerning a material matter.

10. During cross examination, Assistant United States Attorney Don Gast and BIGWITCH had the following exchange:

Q. And he [LITTLEJOHN] explained to you on the way, did he not, that his--that the co-defendants in this case [GEORGE and TAYLOR] were committing a robbery and he needed to go pick them up, right?

A. No, he did not advise that.

Q. All right. What do you say he said?

A. He told me that friends–he needed to pick up some friends because they had went to get some money and they needed a ride home.

....

Q. So you're saying he didn't say anything about a robbery at that point.

A. No.

(Tr. 22-23). BIGWITCH knew that this was false testimony concerning a material matter. BIGWITCH later changed her testimony concerning this point and admitted that LITTLEJOHN had informed her about the robbery on the way back to pick up GEORGE and TAYLOR. (Tr. 27). BIGWITCH also testified that earlier in the day of the robbery she heard LITTLEJOHN and TAYLOR planning a robbery, but at the time she believed they were joking. (Tr. 23-25).

11. During re-direct examination by Mr. Abrams, BIGWITCH changed her testimony again. She asserted that LITTLEJOHN thought the robbery plan was a joke until GEORGE and TAYLOR got upset when the police attempted to stop the vehicle. During re-direct examination the following exchange occurred:

Q. ...[B]ased on the way he [LITTLEJOHN] acted when that blue light went on, the first time he really knew it [the robbery] was serious was when those blue lights went on, wasn't ?

A. Yes.

...

> Q. Because what it was was he then found out after the fact that they weren't joking. Would that be a fair statement?
>
> A. Yes.

(Tr. 47-48). BIGWITCH knew that this was false testimony concerning a material matter.

12. During re-cross examination, AUSA Gast attempted to clarify this point with BIGWITCH and the following exchange occurred:

> Q. Well, you testified a minute ago about Mr. Littlejohn and when you thought he learned about the robbery. When was that? When do you think he learned about this robbery?
>
> A. After the blue lights.

(Tr. 51). BIGWITCH knew that this was false testimony concerning a material matter.

13. AUSA Gast then showed BIGWITCH her written statement to the police detective wherein she described how LITTLEJOHN told her about the robbery while on the way to pick up GEORGE and TAYLOR. (Tr. 53-55). BIGWITCH nevertheless asserted under oath, "Emery Littlejohn was not part of the robbery and was not planned as the getaway car." (Tr. 55). BIGWITCH knew that this was false testimony concerning a material matter.

14. BIGWITCH willfully provided false testimony as described, thereby obstructing the administration of justice in direct criminal contempt of the United States Magistrate Court.

-7-

15. LITTLEJOHN pled guilty on January 19, 2011. As of the date of this filing he is awaiting sentencing.

### Certification

Based upon the above facts, which are contained in a document entitled "Factual Basis for the Guilty Plea for Citrus U-GNA-ST Bigwitch" and which has been signed by the defendant as well as the FTR recording of the detention proceeding held on December 3, 2010, which is incorporated herein by reference, and further based upon the terms and conditions of the Plea Agreement (3) filed in this matter on August 1, 2011 and which is represented as a Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the undersigned certifies that the parties, that being both the government and the defendant, are of the opinion that the conduct of the defendant constitutes a serious criminal contempt punishable by penalties exceeding those set forth in Paragraph (5) of 28 U.S.C. § 636(e).

### ORDER

**IT IS, THEREFORE, ORDERED** that **CITRUS U-GNA-ST BIGWITCH** appear before United States District Judge Martin C. Reidinger on a date, time, and place as shall be set by the Clerk of this court for sentencing in this matter.

### Advice of Right to Counsel

In accordance with the sixth amendment to the United States Constitution and 18, United States Code, Section 3006A(a)(1)(H) and (I), **CITRUS U-GNA-ST**

**BIGWITCH** is advised that she has the right to counsel and that counsel has been previously appointed to represent her in this matter, that being Fredilyn Sison.

### Certificate of Service

The **CLERK OF THIS COURT** is respectfully instructed to send a copy of this Order to Fredily Sison, attorney for the defendant, Assistant United States Attorney Don Gast, and to the United States Probation Office.

Signed: August 4, 2011